IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SUSAN SUTHERLAND,                    )
                                     )
                Plaintiff,           )
                                     )
        v.                           )          1:17CV769
                                     )
JANE AGNEW DOMER, individually       )
and as Attorney-in-Fact              )
for EDWARD P. AGNEW, and             )
LAWRENCE R. SHOVAR,                  )
individually and as Attorney-        )
in-Fact for EDWARD P. AGNEW,         )
                                     )
                Defendants.          )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before the court is the motion to dismiss filed by

Defendants Jane Agnew Domer ("Domer") and Lawrence R. Shovar

("Shovar") (collectively the "Defendants"). (Doc. 10.)

Defendants move to dismiss Plaintiff's claims of breach of

fiduciary duty (Count II), undue influence (Count III),

constructive fraud (Count IV), unjust enrichment (Count V), and

conversion (Count VI) pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim and a lack of standing. (Mem. in Supp.

of Mot. to Dismiss ("Defs. Mem.") (Doc. 11) at 1.) Defendants

move to dismiss the remaining claim for breach of contract

(Count I) and an accounting (Count VII) pursuant to Fed. R. Civ.

P. 12(b)(1) for lack of subject matter jurisdiction. (Id.) For
the reasons that follow, this court finds that Defendants'
motion should be granted. Counts II through VI will be dismissed
pursuant to Fed. R. Civ. P. 12(b)(6), and Counts I and VII will
be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).[1] The dismissal
will be without prejudice.

I.  **BACKGROUND**

Plaintiff has brought this action alleging a number of
state law claims as to Defendants. (See Complaint ("Compl.")
(Doc. 1).) Jurisdiction is based upon diversity of citizenship
under 28 U.S.C. § 1332. (Id. ¶ 6.) In summary, the allegations
contained in Plaintiff Susan Sutherland's ("Plaintiff")
Complaint, construed in the light most favorable to Plaintiff,
show the following.

Plaintiff is a resident of Colorado. (Id. ¶ 3.) Plaintiff's
mother was married to Edward Agnew ("Agnew") for over 42 years,

---

[1] Under Fourth Circuit precedent, when certain claims are
dismissed on 12(b)(6) grounds and the remaining claims fail to
meet the amount in controversy requirement of diversity
jurisdiction, the district court has discretion to either retain
jurisdiction or dismiss the case outright. See Shanaghan v.
Cahill, 58 F.3d 106, 109-12 (4th Cir. 1995) ("There are no
situations wherein a federal court must retain jurisdiction over
a state law claim, which would not by itself support
jurisdiction."). Therefore, this court will first evaluate
Defendants' 12(b)(6) motion and then turn to the jurisdictional
analysis of any remaining counts.

id. ¶ 11), and Plaintiff is Agnew's step-child. (Id. ¶ 12.)
Domer is Agnew's daughter (id. ¶ 9), and Shovar is Domer's
partner. (Id. ¶ 10.) Plaintiff makes a number of allegations as
to the relationships between Plaintiff and Agnew and Domer and
Agnew, (see id. ¶¶ 14-17); those facts, while described in some
detail in the Complaint, are not generally relevant to
Defendants' motion and will be described only as necessary in
the analysis.

    As relevant to Defendants' motion, Plaintiff alleges that,
on May 30, 2014, Plaintiff "filed an action in Larimer County,
Colorado for the appointment of an emergency guardian, a
permanent guardian, a special conservator, and a permanent
conservator for Mr. Agnew." (Id. ¶ 18.)  The parties to that
action, including Plaintiff, Agnew, and Domer, were ordered to
participate in mediation. (Id. ¶ 22.) The parties reached
agreement at mediation to resolve the action, and a written
Memorandum of Agreement (the "MOA") was signed by the parties
and their counsel. (Id. ¶ 23, Ex. 1.)[2] The MOA was entered by the

---

[2] For purposes of a motion to dismiss under Rule 12(b)(6),
this court may consider the complaint (including any exhibits
attached thereto) without converting the motion into one for
summary judgment. See Goldman v. Belden, 754 F.2d 1059, 1065–66
(2d Cir. 1985) ("[A] Rule 12(b)(6) motion is addressed to the
face of the pleading."); see also Fed. R. Civ. P. 10(c)
(material attached as an exhibit to a pleading is considered a
part of the pleading).

court in Colorado. (Id. ¶ 27.) Of particular note to Defendants'
motion, the MOA states that Agnew desired to revoke a will
executed in 2013, and further that Agnew desired "to divide his
assets that remain after his death 50% to Susan Sutherland and
50% to Jane Agnew Domer by POD or other designations . . . [and
that] Edward Agnew and Jane Agnew Domer as attorney-in-fact
agree to make POD designations to achieve this result." (Id.,
Ex. 1 at 1.)  The Complaint does not describe or attach the "POD
or other designations."

The MOA recognized that Agnew desired for Domer to continue
to make Agnew's "medical and financial decisions to the extent
he cannot make them himself," (id.), and Domer agreed to
"provide an annual accounting starting October 31, 2014" of all
accounts and securities owned by Agnew. (Id.)

Plaintiff makes a number of allegations regarding
Defendants' handling and mismanagement of Agnew's finances as
well as alleging issues relating to the relationship between
Plaintiff, Agnew, and Defendants, all following entry of the
MOA. (Compl. (Doc. 1) ¶¶ 28-39.)

Additional facts will be addressed in the analysis where
relevant.

## II. **LEGAL STANDARD – RULE 12(b)(6)**

A federal court sitting in diversity jurisdiction generally applies the relevant substantive law of the state in which the court sits, while applying federal procedural law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72–73, 79–80 (1938); see also Hanna v. Plumer, 380 U.S. 460, 465–66 (1965).

Under federal law, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted).

Nevertheless, the factual allegations must be sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 680; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (applying the Twombly/Iqbal standard to evaluate the legal sufficiency of pleadings). A court cannot "ignore a clear failure in the pleadings to allege any facts which set forth a claim." Estate of Williams-Moore, 335 F. Supp. 2d at 646. Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

Standing is a threshold question in every federal case. Warth v. Seldin, 422 U.S. 490, 499 (1975).

> The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action . . . ."

Id. (quoting Linda R.S. v. Richard D., 410 U.S. 614, 616 (1973)) (other citations omitted). Ordinarily, a party "must assert his

own legal rights . . . and cannot rest his claim to relief on the legal rights . . . of third parties." Id. As relevant to the present case, Plaintiff has alleged claims causing injury to Plaintiff but resting upon the legal rights of others (namely, the rights of Agnew). (See Compl. (Doc. 1) at 9.) To have standing, Plaintiff must assert her own legal rights.

In support of their motion to dismiss the fiduciary duty and related claims, Defendants argue that Plaintiff must establish a fiduciary duty between the parties as recognized by state law. (See Defs.' Mem. (Doc. 11) at 5.) Relying upon Hauser v. Hauser, ____ N.C. App. ____, ____, 796 S.E.2d 391, 395 (2017), Defendants contend that Plaintiff has not established a fiduciary relationship between Plaintiff and Defendants and that the breach of fiduciary duty claim must therefore be dismissed. (Defs.' Mem. (Doc. 11) at 7.) Finally, Defendants contend that Plaintiff has no standing to bring claims that challenge the transactions alleged in the complaint.[3] (Id. at 8.)

---

[3] As noted above, standing is a jurisdictional requirement. In claims such as breach of fiduciary duty and constructive fraud, which require the existence of a relationship of trust and confidence, jurisdictional standing and the elements of the claim overlap. Although this court has addressed the dismissal of claims as a failure to plead an element of the claim under Fed. R. Civ. P. 12(b)(6), these claims are also subject to dismissal on principles of standing.

Plaintiff responds to these arguments in two ways. First, Plaintiff appears to contend that <u>Hauser</u> is distinguishable because of the existence of prior litigation and the MOA in this case. (<u>See</u> Pl.'s Br. in Resp. to Defs.' Mot. to Dismiss ("Pl.'s Br." (Doc. 16) at 5-6.) Plaintiff also argues, without citation, that Domer's "breach of her fiduciary duty to Mr. Agnew flows through to affect the terms of the MOA, thereby providing Ms. Sutherland with standing to assert these claims against Defendant Domer directly." (<u>Id.</u> at 6.) Second, Plaintiff contends her claims are appropriate based upon the implied covenant of good faith and fair dealing implicitly included in the MOA. (<u>Id.</u>)

This court will address the claims individually.

## III. <u>ANALYSIS — RULE 12(b)(6)</u>

### A. <u>Counts II and IV:  Breach of Fiduciary Duty and Constructive Fraud</u>

Count II alleges a breach of fiduciary duty claim. (<u>See</u> Compl. (Doc. 1) at 9-10.) Count IV alleges a similar claim, constructive fraud, (<u>id.</u> at 12-13), which, like a breach of fiduciary duty claim, requires that Plaintiff establish a position of trust and confidence between Plaintiff and Defendants. As the North Carolina Supreme Court has explained:

> Constructive fraud differs from active fraud in that the intent to deceive is not an essential

element, but it is nevertheless fraud though it rests upon presumption arising from breach of fiduciary obligation rather than deception intentionally practiced.

. . . .

Constructive fraud has been frequently defined as a "breach of a duty which, irrespective of moral guilt, the law declares fraudulent . . . ."

Miller v. First Nat'l Bank of Catawba Cty., 234 N.C. 309, 316, 67 S.E.2d 362, 367-68 (1951) (quoting 37 C.J.S. Fraud § 2).

In order "[f]or a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citations omitted). A fiduciary relationship is present in any situation where "'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . .'" Id. (quoting Abbitt v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). To prevail on a claim of breach of fiduciary duty, Plaintiff must plausibly allege that a fiduciary relationship existed between herself, as Plaintiff, and Defendants. Similarly, to state a claim for constructive fraud, Plaintiff is required to show that a duty of trust and confidence existed between the parties and to plead facts alleging that Defendants "t[ook] advantage of [their] position

of trust to the hurt of the plaintiff." <u>Rhodes v. Jones</u>, 232
N.C. 547, 549, 61 S.E.2d 725, 726 (1950).

As to Count II, Plaintiff specifically alleges a fiduciary
relationship between Agnew and Defendants with respect to
Defendants' obligations under an alleged power of attorney
("POA") granted by the MOA. (Compl. (Doc. 1) ¶¶ 52-53.) However,
under a liberal reading of the complaint, the existence of a
fiduciary duty between <u>Plaintiff</u> and Defendants is not plausibly
alleged. Plaintiff alleges three relationships between herself
and Defendants: (1) a family relationship, (2) a contractual
relationship under the MOA, and (3) shared status as future
co-beneficiaries of Agnew's estate. None of these relationships
are sufficient to plausibly establish a fiduciary relationship
or to support a constructive fraud claim.

With respect to a family relationship, "[a]n allegation of
a 'mere family relationship' is not particular enough to
establish a confidential or fiduciary relationship." <u>Benfield v.
Costner</u>, 67 N.C. App. 444, 446, 313 S.E.2d 203, 205 (1984)
(citing <u>Terry v. Terry</u>, 302 N.C. 77, 86-87, 273 S.E.2d 674, 679
(1981)). While that is the general rule, in North Carolina, the
Supreme Court has before recognized claims by a plaintiff for
constructive fraud due to breach of a confidential relationship
wherein the fiduciary duty appears to have existed between the

-10-

defendant and a family member of the plaintiff. See Terry, 273 S.E.2d at 679. Terry, however, is distinguishable for two reasons. First, in Terry, the court found a fiduciary relationship based on the presence of both a close family tie and a "trusted business relationship" in which the "defendant was given managerial responsibilities" over the decedent's business. Id. Here, Plaintiff alleges no active business relationship between Plaintiff and Defendants. Second, it appears that the plaintiff's standing to allege a breach of fiduciary duty between the decedent and a third-party in Terry arose by virtue of the plaintiff's status as an active devisee under the decedent's will. Id. In North Carolina, if a person who is induced by fraud or undue influence to convey property dies and the cause of action still exists (the conveyor has not ratified the conveyance and the statute of limitations has not run), "the right [to sue] passes to the heirs in case of intestacy, and to the devisees in case the grantor leaves a will." Holt v. Holt, 232 N.C. 497, 502, 61 S.E.2d 448, 452 (1950) (citations omitted). However, in the current case, Agnew's right to sue for alleged fraudulent influence by

Defendants has not yet passed to his devisees because Agnew is still alive.[4]

Plaintiff's argument that a fiduciary relationship exists between Plaintiff and Defendants by virtue of the MOA disregards applicable law and the specific language of the MOA. While they are required to satisfy obligations under the contract, "parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract . . . ." Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992). In Biggs v. First-Citizens Bank & Trust Co., the North Carolina Supreme Court addressed a contention by the plaintiff that execution of a release was obtained by fraud and undue influence. 249 N.C. 435, 443, 106 S.E.2d 709, 715 (1959).

---

[4] While not specifically alleged by Plaintiff, this court notes that North Carolina law does not recognize a claim for interference with an expected inheritance, another possible basis on which Plaintiff might seek to recover. Hauser v. Hauser, ____ N.C. App. ____, ____, 796 S.E.2d 391, 394 (2017). While courts have in isolated instances recognized such a claim, see Harmon v. Harmon, 404 A.2d 1020, 1024–25 (Me. 1979), this approach remains a minority position. Hauser, 796 S.E.2d at 394 n.3. Furthermore, allowing a claim for interference with an expected inheritance is problematic in light of the well-settled proposition under North Carolina law that a person has the absolute right to dispose of his or her estate while alive, despite the fact that such disposal will certainly reduce and might entirely deplete the economic value received by expectant beneficiaries of the estate. Holt v. Holt, 232 N.C. 497, 502, 61 S.E.2d 448, 451–52 (1950).

Plaintiff contended that when the release was executed, a fiduciary relationship existed. Id. at 714-15. The Supreme Court held that the subject agreement in Biggs did not establish a fiduciary relationship; instead, that agreement "simply defined the contractual rights and obligations of the respective parties." Id. at 715. Similarly, in this case, the MOA does not establish a fiduciary relationship between Plaintiff and Defendants, but rather simply defines the contractual rights and obligations of the parties. The MOA specifically states that "[i]t is Edward Agnew's wish that Jane Agnew Dormer [sic] continue to make his medical and financial decisions to the extent he cannot make them himself." (Compl. (Doc. 1), Ex. 1 at 1.) Thus, Agnew, it appears, placed trust and confidence in Domer. Plaintiff's consent to the MOA, standing alone, is insufficient to create a fiduciary relationship between Plaintiff and Defendants.

Plaintiff's relationship to Domer as a future co-beneficiary under Agnew's will is similarly insufficient to establish a fiduciary relationship between Plaintiff and Defendants. In Holt v. Holt, the North Carolina Supreme Court explained:

> In so far as his children are concerned, a parent has an absolute right to dispose of his property by gift or otherwise as he pleases. He may make an

unequal distribution of his property among his children with or without reason. These things being true, a child has no standing at law or in equity either before or after the death of his parent to attack a conveyance by the parent as being without consideration, or in deprivation of his right of inheritance.

. . . .

When a person is induced by fraud or undue influence to make a conveyance of his property, a cause of action arises in his favor, entitling him, at his election, either to sue to have the conveyance set aside, or to sue to recover the damages for the pecuniary injury inflicted upon him by the wrong. But no cause of action arises in such case in favor of the child of the person making the conveyance for the very simple reason that the child has no interest in the property conveyed and consequently suffers no legal wrong as a result of the conveyance.

61 S.E.2d at 451-52 (internal citations omitted).

As a result of the foregoing, this court finds Plaintiff's allegations insufficient to establish the existence of a fiduciary duty between Plaintiff and Defendants. Because a fiduciary duty must stem from a special trust relationship between two parties and does not automatically encompass other parties to a contract, this court further finds no authority for Plaintiff's legal argument that Domer's "breach of her fiduciary duty to Mr. Agnew flows through to affect the terms of the MOA." (See Pl.'s Br. (Doc. 16) at 6.)

**B.**    <u>**Implied Covenant of Good Faith and Fair Dealing**</u>

This court finds no basis to conclude that the implied covenant of good faith and fair dealing in the MOA was breached, as argued by Plaintiff in her response to Defendants' motion to dismiss. (<u>Id.</u>) The implied covenant of good faith and fair dealing is implicit in every contract and requires "that neither party [] do anything which injures the right of the other to receive the benefits of the agreement." <u>Bicycle Transit Auth., Inc. v. Bell</u>, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985). When a plaintiff's claim for breach of the implied covenant of good faith is based on an alleged breach of the express terms of the contract, these two claims are treated as a single breach of contract issue and evaluated together. <u>Suntrust Bank v. Bryant/Sutphin Props., LLC</u>, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012). Where a plaintiff argues that the implied covenant was breached separate and apart from express breaches of the contract, it remains true that the implied covenant can never produce a result contrary to, or inconsistent with, the express language used in the agreement. <u>See, e.g.</u>, <u>Lane v. Scarborough</u>, 284 N.C. 407, 200 S.E.2d 622, 624–25 (1975) ("[N]o meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions" of a contract.) (quoting 17 Am. Jur. 2d <u>Contracts</u> § 255 at 652)).

Plaintiff has not alleged any actions by Defendants that would hinder Plaintiff's right to receive her share of Agnew's assets "that remain <u>after his death</u>" as provided by the MOA. (<u>See</u> Compl. (Doc. 1), Ex. 1 at 1 (emphasis added).) Rather, Plaintiff seems to argue that the MOA should be read to include an implied obligation on the part of Agnew and Defendants to conserve his assets during the remainder of his life. (Pl.'s Br. Doc. 16) at 5-6.) The express terms of the MOA do not evince a clear intent that Agnew be restricted from disposing of his assets during his life. To infer a good faith obligation on the part of Defendants to ensure that Agnew's assets are conserved would be inconsistent with the language of the agreement. Therefore, Plaintiff's claim for breach of the implied covenant of good faith will be denied. To the extent that this claim is instead based upon alleged express breaches of the HIPAA and POA provisions of the MOA, these express breaches are evaluated for subject matter jurisdiction in Section V below.

### C. <u>Count III: Undue Influence</u>

Count III alleges a claim of undue influence as to Defendants. Plaintiff makes a number of allegations regarding Agnew's diminished capacity and then alleges that Defendants, "[c]apitalizing on their confidential relationship with Mr. Agnew while Mr. Agnew was in a weakened and vulnerable state

. . . persuaded Mr. Agnew to effectuate [t]ransfers." (Compl. (Doc. 1) ¶ 62.) Plaintiff further alleges that, "[d]ue to Domer and Shovar's exercise of undue influence over Mr. Agnew to effectuate [t]ransfers, Plaintiff is entitled [to] actual damages . . . ." (Id. ¶ 67.)

The North Carolina Supreme Court has defined undue influence as "a fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result." In re Estate of Loftin, 285 N.C. 717, 722, 208 S.E.2d 670, 674-75 (1974). Under North Carolina law, "[t]ypically, the real party in interest in cases of fraud and undue influence seeking to set aside conveyances of realty is the person against whom the actions were taken." Finks v. Middleton, ____ N.C. App. ____, ____, 795 S.E.2d 789, 795 (2016) (citing Holt, 61 S.E.2d at 452). Plaintiff has not alleged any undue influence exerted

upon her nor has Plaintiff identified any property of hers that has been conveyed as a result of undue influence.[5]

Plaintiff offers no legal or factual authority to support a finding that she has been affected by any undue influence nor has she plausibly alleged any property belonging to her that was transferred to Defendants as a result of undue influence over Plaintiff. As a result, this court finds that the undue influence claim should be dismissed.

### D.    Count V: Unjust Enrichment

Defendants argue that the unjust enrichment claim (Count V) is subject to dismissal because, as a potential beneficiary of Agnew, Plaintiff has no standing to bring claims that challenge the validity of any transactions undertaken by Agnew. (See Defs.' Mem. (Doc. 11) at 8.) As explained above, to the extent the unjust enrichment claim is based upon the breach of fiduciary duty, constructive fraud, and undue influence causes of action, the claim is subject to dismissal.

---

[5] This claim is alternatively subject to dismissal because Plaintiff is not a real party in interest. Under Fed. R. Civ. P. 17(a), in a diversity action, the procedural real party in interest is the party granted a cause of action under substantive state law. Va. Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 83 (4th Cir. 1973). As explained above, North Carolina law grants a cause of action in undue influence cases to the victim of the alleged undue influence so long as the victim is still alive. Finks, 795 S.E.2d at 795.

The unjust enrichment claim re-alleges and incorporates by reference all preceding allegations. Those allegations include, inter alia, the MOA. That contract, attached as an exhibit to the Complaint, contains the following provisions:

> 3. It is Edward Agnew's wish to honor his will executed on July 4, 2011 and to revoke the will he executed on August 27, 2013 and that Edward Agnew may execute an addendum to his will regarding personal property distribution.
>
> 4. It is Edward Agnew's wish to divide his assets that remain after his death 50% to Susan Sutherland and 50% to Jane Agnew Domer by POD or other designations. Susan Sutherland and Jane Agnew Domer shall cooperate to achieve this result by October 31, 2014. Edward Agnew and Jane Agnew Domer as attorney-in-fact agree to make POD designations to achieve this result.
>
> 5. Edward Agnew agrees this is the final expression of his intent regarding the distribution of his assets after his death and agrees that he will not change any testamentary documents. It is Edward Agnew's wish that Jane Agnew Dormer [sic] continue to make his medical and financial decisions to the extent he cannot make them himself.

(Compl. (Doc. 1), Ex. 1 at 1.) The terms of the contract control, and Plaintiff's claim for unjust enrichment is subject to dismissal for the following reasons.

First, in North Carolina, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). In this case, there is a contract

between the parties and therefore that contract governs any
claims.

Second,

> [i]n order to establish a claim for unjust enrichment,
> <u>a party must have conferred a benefit on the other
> party</u>. The benefit must not have been conferred
> officiously, that is it must not be conferred by an
> interference in the affairs of the other party in a
> manner that is not justified in the circumstances.
> The benefit must not be gratuitous and it must be
> measurable.

<u>Id.</u> (emphasis added).

Plaintiff has failed to plausibly plead that she conferred
any benefit upon Defendants. Plaintiff specifically alleges that
"Domer and Shovar used their position of authority . . . to
obtain use or control over Mr. Agnew's property . . . [and that]
Domer and Shovar unjustly benefited and enriched themselves at
the expense of Plaintiff and the Estate of Mr. Agnew." (Compl.
(Doc. 1) ¶¶ 79, 81.)  As discussed above, the Complaint fails to
establish that Plaintiff has any present interest in Agnew's
property as opposed to a future, indefinite interest in
inheriting property as stated in the MOA. As a result,
Plaintiff's allegations fail to plausibly establish that
Plaintiff conferred any benefit upon Defendants. Agnew, and
Agnew's property, were the source of any alleged benefit to
Plaintiff. Furthermore, even assuming Plaintiff had some present

interest in Agnew's property, that interest and any resulting
right is controlled by the express terms of the MOA, which
preclude Plaintiff from recovering on a quasi-contract unjust
enrichment claim. Plaintiff has failed to plausibly allege an
unjust enrichment claim and the claim is therefore subject to
dismissal.

### E. Count VI: Conversion

Count VI of the Complaint alleges a conversion claim.
(Compl. (Doc. 1) ¶¶ 85-90.)  Plaintiff states that Defendants,
"as alleged herein and as will be shown in discovery and at the
trial of this matter, converted the property of Mr. Agnew." (Id.
¶ 86.) The Complaint further alleges that "[a]ny property
converted by Domer and Shovar and subsequently acquired or
transferred to others is subject to the superior claim of right
by Plaintiff or the Estate of Mr. Agnew." (Id. ¶ 87.)

"The tort of conversion is well defined as 'an unauthorized
assumption and exercise of the right of ownership of goods or
personal chattels belonging to another . . . .'" Peed v.
Burleson's, Inc., 244 N.C. 437, 439, 94 S.E.2d 351, 353 (N.C.
1956) (quoting 89 C.J.S. Trover & Conversion § 1). Under North
Carolina law, "[t]here are, in effect, two essential elements of
a conversion claim: ownership in the plaintiff and wrongful
possession or conversion by the defendant." Variety Wholesalers,

Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523,
723 S.E.2d 744, 747 (2012).

In the present case, Plaintiff fails to allege any present
ownership of the property at issue. Instead, Plaintiff's
pleadings make it clear that any property which is the subject
of this Complaint is currently owned by Agnew. (See Compl. (Doc.
1) ¶ 86 ("Domer and Shovar . . . converted the property of
Mr. Agnew.").) Plaintiff's status as a future beneficiary under
Agnew's estate is insufficient to establish ownership and
Plaintiff's claim, by and through the MOA, is solely a
contractual interest in certain future inheritance proceeds.
Therefore, Plaintiff's conversion claim should be denied.

## IV.  LEGAL STANDARD – RULE 12(b)(1)

This court has diversity jurisdiction where complete
diversity of citizenship exists between the parties and the
amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

As to the amount in controversy requirement, the general
rule is that the plaintiff's good faith allegation of the amount
of recoverable damages is taken at face value. St. Paul Mercury
Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938). As the
Fourth Circuit has explained:

> [i]n most cases, the "sum claimed by the
> plaintiff controls" the amount in controversy
> determination. If the plaintiff claims a sum

> sufficient to satisfy the statutory requirement, a
> federal court may dismiss only if "it is apparent, <u>to
> a legal certainty</u>, that the plaintiff cannot recover
> the amount claimed."

<u>JTH Tax, Inc. v. Frashier</u>, 624 F.3d 635, 638 (4th Cir. 2010)

(quoting <u>St. Paul Mercury</u>, 303 U.S. at 288). In other words, the

defendant must show "the legal impossibility of recovery" to be

"so certain as virtually to negative the plaintiff's good faith

in asserting the claim." <u>Wiggins v. N. Am. Equitable Life

Assurance Co.</u>, 644 F.2d 1014, 1017 (4th Cir. 1981) (quoting

<u>McDonald v. Patton</u>, 240 F.2d 424, 426 (4th Cir. 1957)).

When a plaintiff seeks non-monetary damages, such as

"declaratory or injunctive relief, it is well established that

the amount in controversy is measured by the value of the object

of litigation." <u>Hunt v. Wash. State Apple Advert. Comm'n</u>, 432

U.S. 333, 347 (1977). Similarly, "[i]n a suit for specific

performance, the amount in controversy is the value of the

property involved." <u>Humble Oil & Ref. Co. v. DeLoache</u>, 297

F. Supp. 647, 649 n.1 (D.S.C. 1969) (citing <u>Ebensberger v.

Sinclair Ref. Co.</u>, 165 F.2d 803, 805 (5th Cir. 1948)).

**V.   <u>ANALYSIS – RULE 12(b)(1)</u>**

As a threshold matter, Plaintiff bases jurisdiction on

diversity under 28 U.S.C. § 1332. Complete diversity exists

between Plaintiff and Defendants, (<u>see</u> Compl. (Doc. 1) ¶ 6), and

Plaintiff alleged in several instances in the Complaint that the damages exceed $75,000. (See, e.g., Compl. (Doc. 1) ¶ 49 (Count I), ¶ 83 (Count V), ¶ 89 (Count VI).) Because of the analysis that follows, it is not necessary for this court to conduct a detailed examination into Plaintiff's good faith basis for alleging over $75,000 in total damages.

Defendants argue in their motion to dismiss that Plaintiff's claims for breach of contract (Count I) and an accounting (Count VII) are subject to dismissal for lack of subject matter jurisdiction because the amount in controversy is less than $75,000. (Defs.' Mem. (Doc. 11) at 9-10.) Plaintiff responds that the pleadings are sufficient to "establish[] that the amount at issue is greater than the $75,000 threshold." (Pl.'s Br. (Doc. 16), at 8.)

First, this court finds Plaintiff has failed to plausibly establish that the amount in controversy for Counts I and VII is greater than $75,000. In the absence of the additional counts (which are subject to dismissal under Rule 12(b)(6) as explained earlier), this court is convinced that it is a legal impossibility for Plaintiff to recover $75,000 in damages. Plaintiff has sued for an accounting and seeks specific performance of the MOA provisions that require Defendants to provide a list of certain transfers involving Agnew's estate and

that require a HIPAA waiver be granted by Domer as Agnew's POA. (Compl. (Doc. 1) at 15.) These items all constitute non-monetary relief, and the amount in controversy for non-monetary claims "is measured by the value of the object of the litigation." Hunt, 432 U.S. at 347. In other words, for purposes of determining the amount in controversy, only the monetary damages that Plaintiff alleges based upon her fiduciary duty, constructive fraud, undue influence, unjust enrichment, and conversion claims (Counts II-VI) are relevant. As explained above, none of these claims are viable.

Unlike in Humble Oil, Plaintiff has not alleged any independent entitlement or value to an accounting. The only possible value to the accounting is the determination of Agnew's assets and the amount by which those assets that have been depleted as a result of transfers alleged in the Complaint. That, in turn, discloses no value to Plaintiff for two reasons.

First, under North Carolina law, "a child has no standing . . . to attack a conveyance by the parent as being without consideration, or in deprivation of his right of inheritance . . . for the very simple reason that the child has no interest in the property conveyed . . . ." Holt, 61 S.E.2d at 452. Thus, Plaintiff has no present interest in Agnew's property and suffers no legal wrong as a result of any conveyances by

Agnew that would entitle her to an accounting of these transfers. See Hauser, 796 S.E.2d at 396 (rejecting the argument that "status as a potential beneficiary" of an estate entitles plaintiff to an accounting under similar circumstances).

Second, as alleged in the Complaint, Plaintiff's right to inherit after Agnew's death arises only from the provisions of the MOA. The MOA provides, in relevant part:

> 4.  It is Edward Agnew's wish to divide his assets that remain after his death 50% to Susan Sutherland and 50% to Jane Agnew Domer by POD other designations. . . .
>
> 5.  Edward Agnew agrees this is the final expression of his intent regarding the distribution of his assets after his death and agrees that he will not change any testamentary documents. . . .

(Compl. (Doc. 1), Ex. 1 at 1.) The MOA makes clear that Plaintiff's interest in the assets of Agnew is only as to those "assets that remain after his death . . . ." (Id.) Plaintiff has not plausibly alleged any claim or right to any assets prior to the death of Agnew, nor has Plaintiff plausibly alleged a right to a certain estate value at the present time.

As a result, this court finds that Plaintiff's claims for breach of contract (Count I) and an accounting (Count VII) fail to plausibly establish any possible recovery in the amount of $75,000 or of assets with a value of $75,000. This court has discretion to dismiss Plaintiff's remaining counts (Counts I and

VII) for lack of subject matter jurisdiction. See <u>Shanaghan v.</u>
<u>Cahill</u>, 58 F.3d 106, 112 (4th Cir. 1995) ("[I]f some event
subsequent to the complaint reduces the amount in controversy,
such as the dismissal of one count . . . , the court must then
decide in its discretion whether to retain jurisdiction . .
. ."). In deciding whether to retain jurisdiction or dismiss the
case, relevant considerations include fairness, judicial
economy, whether the plaintiff is able re-file in state court,
and the extent to which federal judicial resources have already
been expended. <u>Id.</u>

　　　After weighing the factors that guide our discretion in
choosing whether to retain or dismiss supplementary claims that
fail to meet the amount in controversy, this court declines to
retain jurisdiction over Counts I and VII. Here, there are no
obstacles that would prevent Plaintiff from bringing her
contractual claims in state court. See <u>id.</u> (emphasizing the
presence of a state law remedy as an important factor in the
discretionary jurisdiction analysis). Further, Counts I and VII
are ancillary to the heart of the Complaint and any remedy
imposed were Plaintiff to prevail on these counts would not
redress Plaintiff's central grievance (the alleged improper
transfers made from Agnew's estate). Therefore, this court finds

that the claims for breach of contract and an accounting should be dismissed pursuant to Rule 12(b)(1).

## VI. **PLAINTIFF'S REQUEST TO AMEND**

Plaintiff argues that, should any of the claims be determined to be insufficiently pled, Plaintiff should be afforded an opportunity to amend. (Pl.'s Br. (Doc. 16) at 8.) However, Plaintiff presents no facts or allegations to suggest that the deficiencies in the breach of fiduciary duty, constructive fraud, undue influence, unjust enrichment, and conversion claims could be cured under any circumstances. As a result, this court finds Plaintiff's request to amend the Complaint futile in the absence of any proposed amendments to the pleadings.

Plaintiff further argues that these claims should be dismissed without prejudice. The breach of contract and accounting claims, because they are dismissed on jurisdictional grounds, will be dismissed without prejudice. Because it is possible that one or more of the dismissed claims may provide standing in the future due to changed circumstances, this court finds that the claims dismissed by this order should be dismissed without prejudice.

**VII. <u>CONCLUSION</u>**

In light of the foregoing,

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), (Doc. 10), is **GRANTED.**

**IT IS FURTHER ORDERED** that the claims contained in the Complaint (Doc. 1) and denominated as Counts II, III, IV, V, and VI are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER ORDERED** that the claims contained in the Complaint (Doc. 1) and denominated as Counts I and VII are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(1).

As no further claims remain in this matter, a judgment shall be entered contemporaneously herewith dismissing the Complaint without prejudice.

This the 14th day of September, 2018.

_____
United States District Judge